**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,              CRIMINAL DIVISION

       vs.                                 Criminal No. 20-MJ-9421

WILLIAM F. KAETZ,
         Defendant.

## <u>MOTION TO RECONSIDER DETENTION</u>

AND NOW, comes the Defendant, William F. Kaetz, by and through his attorney, Douglas Sughrue, Esquire, requesting that a U.S. District Court Judge reconsider U.S. Chief Magistrate Judge Eddy's order of detention, see ECF Doc. 15.  In support thereof, the following is averred:

1.  Defendant is charged in a two-count indictment with violating:

    a.  Title 18 U.S.C. §875(c)—Interstate communications containing threats to injure;
    b.  Title 18 U.S.C. §115(a)(1)(B)—Threaten to assault and murder a United States Judge.

2.  On October 18, 2020, Mr. Kaetz was arrested and made an initial appearance.  Thereafter, the preliminary and detention hearings were scheduled in this matter for October 23, 2020 at 2:30 p.m. in front of Chief Magistrate Judge Cynthia Reed Eddy.

3.  On October 23, 2020, the USA filed a motion requesting detention pursuant to 18 USC §3142(f)(1), see ECF Doc. 11, alleging that no condition or combination of conditions could reasonably assure the appearance of Mr. Kaetz as required and the safety of any other person and the community because Mr. Kaetz is a danger to the community and a flight risk.

4.  After a defense motion to continue the hearings, preliminary and detention hearings were held on October 26, 2020 after which U.S. Chief Magistrate Judge Cynthia Reed Eddy[1]

---

[1] Sitting by special designation.

found probable cause.  Chief Magistrate Judge Eddy also determined that Mr. Kaetz was a

danger to the public and ordered his detention.  Chief Magistrate Judge Eddy cited the

following in support of detention, in pertinent part:

AO 472  (Rev. 09/16)  Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  2:20-mj-9421-CRE |
| WILLIAM KAETZ | ) | |
| *Defendant* | ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

### Part III – Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☐ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☐ Subject to lengthy period of incarceration if convicted
☒ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☒ History of alcohol or substance abuse
☐ Lack of stable employment
☐ Lack of stable residence
☐ Lack of financially responsible sureties
☐ Lack of significant community or family ties to this district
☐ Significant family or other ties outside the United States

Page **2** of **3**

AO 472 (Rev. 09/16)  Order of Detention Pending Trial

☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☐ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents
☐ Background information unknown or unverified
☒ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:
The  defendant has been charged with violations of 18 U.s.C. 875( c ), Interstate Communications Containing Threats to
Injure and 18 U.s.C. 115 (a)(1)(B)  threaten to Assault and Murder a United States Judge.  The defendant has a prior
conviction for similar conduct and for the additional reasons stated on the  record.

## The Statue—18 USC §3142

"In our society liberty is the norm, and detention prior to trial…is the carefully limited

exception." United States v. Salerno, 481 U.S. 739, 755 (1987).  Indeed, 18 U.S.C. §3142 contains

a presumption of release.  "The judicial officer shall order the pretrial release of the person on

personal recognizance…"  18 U.S.C.A. §3142.  In Mr Kaetz's case, in the request for detention

filed by the USA, the USA relies solely upon the fact that Mr. Kaetz is charged with a crime of

violence as that term is defined in 18 USC §3156.  Title 18 U.S.C. 3156, in pertinent part, states:

> (a)(4) the term "crime of violence" means—
> (A)an offense that has as an element of the offense the use, attempted use, or threatened
> use of physical force against the person or property of another;

18 U.S.C.A. §3156.  Additionally, in a boilerplate motion the USA alleged that no condition or

combination of conditions will reasonably assure the appearance of defendant and the safety of

any other person and the community because the Defendant is a danger to any other person or the

community and/or Defendant is a flight risk.  No facts are alleged supporting either contention.

Although the USA cites a concern that Mr. Kaetz is a flight risk, the USA failed to provide

any evidence that Mr. Kaetz is a serious flight risk, meaning a higher degree of flight risk than the

average case/person, required by §3142.  The USA failed to provide evidence of flight risk because

3

there is not any evidence that Mr. Kaetz will fail to appear for any hearings or trial.  It is undisputed that all of Mr. Kaetz's family, friends, resources, employment, and community activity is all based in and around Paramus, NJ.  Mr. Kaetz has not been in much trouble in his past, but Mr. Kaetz has appeared for all court hearings and meetings when required.  Accordingly, under 18 U.S.C. §3142(f)(2), the USA has to prove by clear and convincing evidence that Mr. Kaetz poses a serious flight risk, i.e, something more than the normal or regular flight risk, or that Mr. Kaetz poses a serious risk that he will obstruct or intimidate a witness or juror.  The USA failed to submit any evidence of either §3142(f)(2) factor on the record as it stands.  As such, Mr. Kaetz will concentrate on the listed reason he was detained—whether he is a danger to any person or the community under §3142(f)(1)(A).

Mr. Kaetz agrees and understands that he is charged with allegedly committing a crime of violence which triggers application of §3142(f)(1)(A).  However, Mr. Kaetz disagrees with the conclusion that the USA proved or could ever prove that he is a danger to any one person or the community requiring pretrial detention.  Mr. Kaetz submits that he is not a danger to anyone. When a more thorough hearing or analysis of the factors to be considered under §3142(g) is done, the Court will conclude that Mr. Kaetz should be released upon personal recognizance as described in §3142(a) & (b).  Moreover, if the Court concludes that release on personal recognizance is not proper, then a condition or set of conditions exists which can reasonably assure the safety of any one person or the community.  Obviously, many of those same conditions will also assure the appearance of Mr. Kaetz.  Since risk of flight or non-appearance does not seem to be the issue of concern in this matter, Mr. Kaetz will focus on the factors surrounding a danger to any one person or the community.

When §3142(f)(1) is triggered, the Bail Reform Act sets out the factors which should be the focus of the Court in deciding whether a person, Mr. Kaetz in this instance, is bailable, meaning is there a condition or set of conditions that can assure the safety of any one person or the community.  Those factors to be considered are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C.A. §3142(g).

**The Nature and Circumstances of the Offense Charged**

As Mr. Kaetz concedes above, the allegation made by the USA is that Mr. Kaetz committed a "crime of violence" by charging him with violating 18 U.S.C. §§115 & 875 as that term is defined in 18 U.S.C. §3156.  A filing of the complaint or the issuance of an indictment is merely an accusation and is not an indicator of guilt.  The USA's presentation of the case against Mr. Kaetz at the preliminary hearing was incomplete[2].  The facts against Mr. Kaetz included in the affidavit

---

[2] Mr. Kaetz does not know if the USA was aware of the incomplete nature of the case.  Indeed, the speed of the arrest and unique transfer of the case for prosecution when combined with the required timeliness of the hearings

of probable cause supporting the criminal complaint were also incomplete.  The incomplete nature of the USA's case drastically effects the nature and circumstances of the offense charged and the weight of the evidence against Mr. Kaetz—the first two factors considered by the Court in its analysis.

A review of the testimony from the preliminary and detention hearings in this matter reflects some easily determined facts.  Was an email sent?  Yes.  Was the email likely sent by Mr. Kaetz?  Yes.  Does the email contain strong language?  Yes.  A review of the testimony and exhibits will not reflect the entirety of the alleged offense.  An email, like a letter it replaced contains parts.  Meaning, an email contains an address, a greeting, a body, a salutation, and, at times, enclosures, or attachments to which the writer of the email may reference to permit a more accurate and precise interpretation of the words used within the body of the email.  In the affidavit of probable cause and in the testimony offered by the USA at the preliminary and detention hearings, no mention of the attachments to the email was made.

Due to the speed with which Counsel was appointed, the immediate incarceration of Mr. Kaetz, and Counsel's inability to speak with Mr Kaetz due to covid-19 protocols at the Essex County Correctional facility, Counsel was unaware that attachments to the email existed.  In fact, approximately 59 pages of materials were attached to the email to provide context to Mr. Kaetz's words within it.  There is no evidence on record that the USMS ever read the attached materials during the investigation of this matter.  Had the USMS reviewed the attachments, perhaps the USMS would have understood the civil complaint and motion to recuse Judge 1 filed by Mr. Kaetz that remained pending and unresolved.

---

under the criminal rules influenced the readiness and degree of understanding of all of the facts and circumstances involved.

The attachments to the email included several documents filed at ECF Docs. 32, 32-1, 32-2, 32-3, 32-4, 33, 33-1, 33-2, and 33-3 at 2:19-cv-08100 on July 27, 2020. Those documents are a one-page motion to reopen case, a 41 page amended civil complaint demanding a jury trial, a one page proposed civil action order, a one page certificate of service, an eleven page motion for recusal of Judge 1, a one page proposed civil action order, and a one page certificate of service. The email attachments also included photocopies of the priority mailing envelope used to mail the court papers. The attachments to the email are similar in nature, if not exact copies of, the materials mailed directly to Judge 1 at his/her residence.

The two most instructive and meaningful attachments to the email are the motion to reopen and the motion to recuse. The email directs the reader to review the vital court papers included as attachments. Mr. Kaetz clearly views his civil complaint against many governmental figures as important to the national security of our country and the election which was poised to happen at the beginning of November. His perceived significance of this matter drives his frustration resulting in an email to the USMS, the agency charged with protecting the courts, asking them to review all of the materials and take action against Judge 1—investigate and remove her from the bench. The inclusion of the attached court filings is an indicator that Mr. Kaetz intends of moving forward just as he always does, through court action, not physical action. Indeed, in the email itself, he makes mention of his proclivity to use the pen.

Moreover, the email allegedly sent by Mr. Kaetz was not sent in secret, was not sent solely to Judge 1 and in fact was sent to many others, including several DOJ email addresses, so that delivery to persons with power in the Courts would receive and review it and its attachments. One is hard pressed to imagine a scenario that an email intended to threaten a judge would be sent to the very organization tasked with protecting the judge. If so, perhaps that person was not thinking

clearly.  It is not surprising that an odd 5:00a.m. email may have been sent by someone who had too much to drink.  Upon being arrested, Mr. Kaetz purportedly mentioned to the USMS that "…he had possibly gotten drunk and sent some emails he probably shouldn't have sent." (PHT at page 23, line 12-13).  Another fact is that the email was sent at approximately 5:00 a.m.—a time when no reasonable person would expect the recipient to receive it and immediately review it.  Mr. Kaetz submits that the timing of the email and his inebriation provides some meaningful context to a 5:00a.m. email sent to the USMS and many others with 59 pages of attachments.  The nature and characteristics of this offense should lead a judge to determine that he is not a danger to any person or the community.  Upon learning about the voluminous attachments to the email, the time the email was sent, and the blood alcohol content of the sender, all of which provide insight into the context of the email, a judge can easily develop a list of conditions which could be easily monitored which would assure the safety of any one person or the community.

The USA went to great lengths to detail the efforts of Mr. Kaetz to obtain the home address of Judge 1.  The USA was attempting to note that a person who goes to those great lengths must be committed to accomplish his task.  First, there is no law against knowing the home address of a judge, other member of the court, or law enforcement.  Indeed, our addresses are usually at or near where we live with street names and house/apartment numbers displayed for all to see.  Whether a person is aware of the home address of a judge because of friendship or because a judge is your neighbor, not much more effort is required to find the residence of a judge than it is to buy any product online.  Various websites offer personal public information on people for a fee.  Paying less than $20 to a website with an on-line address search mechanism often accomplishes this task—doing so is not hard, nor time consuming.

Judges do not enjoy any special protection from lawsuits or service of process.  In fact, if a person who happens to be a judge is being sued, the person/judge has to be served a copy of the complaint or writ.  One of the most likely places to serve a person would be their home address. Understandably, judges may have the desire or need to secret their residence from public disclosure.  Today, Mr. Kaetz is not aware of any law which provides judges that legally enforceable anonymity.

As a review of the record in this matter including the exhibits attached to this filing, the USA failed to prove that there was no condition or set of conditions to reasonably assure the safety of any one person or the community.  Conditions that would reasonably assure the safety of the community can be the use of a third party custodian, curfews, EHM tethers with GPS, voice recognition software used by pretrial services, and conditions of work release windows only if the third party custodian is present with Mr. Kaetz.  Mr. Kaetz could also be ordered to stay out of certain boroughs, townships or counties in and around the relevant areas of New Jersey.

**The Weight of the Evidence**

Mr. Kaetz incorporates by reference the information and argument detailed above concerning the nature and circumstances of the offense charged.  In the United States, the government does not get to charge someone with a crime and render judgment on that person. Citizens are presumed to be innocent of the charges until proven guilty beyond a reasonable doubt by a unanimous jury of their peers.  To prove a person is guilty of violating 18 U.S.C. §875(c), a jury must find beyond a reasonable doubt that Mr. Kaetz knowingly and willfully transmitted a communication in interstate commerce to a District Court Judge with the specific intent to issue a threat or with specific knowledge the communication would be viewed as a threat.

> We believe Section 875(c) contains both a subjective and objective component, and the Government must satisfy both in order to convict a defendant under the statute. The

Supreme Court focused on the subjective component. It held that to satisfy the subjective component of Section 875(c), the Government must demonstrate beyond a reasonable doubt that the defendant transmitted a communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat.

The Government must also satisfy the objective component, which requires it to prove beyond a reasonable doubt that the defendant transmitted a communication that a reasonable person would view as a threat. The objective component of Section 875(c) shields individuals from culpability for communications that are not threatening to a reasonable person, distinguishing true threats from hyperbole, satire, or humor. *See Watts v. United States*, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). It requires the jury to consider the context and circumstances in which a communication was made to determine whether a reasonable person would consider the communication to be a serious expression of an intent to inflict bodily injury on an individual. *See Virginia v. Black*, 538 U.S. 343, 360, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003).[6]

United States v. Elonis, 841 F.3d 589, 596–97 (3d Cir. 2016).

To find a person guilty of violating 18 U.S.C. §115(a)(1)(B), a jury must find beyond a reasonable doubt that Mr. Kaetz threatened to murder a United States Judge with the intent to impede, intimidate, or interfere with such judge while engaged in the performance of official duties, or with intent to retaliate against such judge on account of the performance of official duties.  Said threat must be a "true threat."  The language used must be something more than that which is protected by the First Amendment of the Constitution of the United States.  "The First Amendment protects vehement, scathing, and offensive criticism of public officials, including United States judges. Should you find that the defendant's statements for which he is charged were no more than mere political hyperbole then you may be justified in finding that no threat was in fact made."  United States v. Turner, 720 F.3d 411, 426 (2d Cir. 2013).

Context matters.  The alleged communication relevant to this matter involves not solely and email, but also the documents that were attached to it.  As the jury was instructed in Turner,

[W]hether a particular statement is a threat is governed by an objective standard. That is, a statement is a threat if it was made under such circumstances that a reasonable person hearing or reading the statement and familiar with its context would understand

it as a serious expression of an intent to inflict an injury. An absence of explicitly threatening language does not preclude you from finding the statement to be a threat.

It is not necessary for the government to prove that the defendant intended to carry out the threat, that the defendant had the ability to carry out the threat, or that the defendant communicated the threat to the victims. The relevant intent is the intent to communicate the threat.

In determining whether the charged statements constitute a threat, you should consider the context in which they were made. Written words or phrases and their reasonable connotations take their character as threatening or harmless from the context in which they are used, measured by the common experience of the society in which they are published. This includes the circumstances in which they are uttered as well as the circumstances of the person who uttered them.

United States v. Turner, 720 F.3d 411, 426 (2d Cir. 2013).

Considering the weight of the evidence de novo, the USA is not likely to convict Mr. Kaetz of violating 18 U.S.C. §875(c) or §115(a)(1)(B). The weight of the evidence is not in their favor. First, no reasonable person is going to interpret that the email and attachments sent to several email addresses at 5:00a.m. by a drunk person was done with the intent to communicate a true threat or that the content of what was written contained a threat. The sections of the email (while not considering any of its attachments) the USMS finds most concerning as detailed in the criminal complaint are: "I filed this case long ago…", "[Judge 1] has been avoiding and stonewalling the case.", "I have motions for [Judge 1's] recusal, motions to reopen the case as per [Judge 1's] orders, motion to expedite the case, and I will be filing a mandamus.", "You have an obligation to remove [Judge 1]. Read the Court documents.", "Stop by and ask [Judge1] why [Judge 1] is stonewalling my case. As listed in the complaint, the USA would have you think that this use of language is threatening. The list of those allegedly concerning statements within the email are merely a list of items filed by Mr. Kaetz at one of his cases. Additionally, the mentioned items are merely a listing of the items included in a package addressed to Judge 1. During the preliminary hearing USMS

Deputy Safier testified that there was "nothing alarming or threatening about what was sent to Judge 1's home." PHT page 8 line 24.

Mr. Kaetz did not try to secret his identity within the email nor with the package mailed to Judge' 1's home address. Normal behavior when attempting to communicate a threat to someone may be to try to hide one's identity—hiding one's identity may be considered circumstantial proof of an ill-intent. A repetitive theme in the allegations against Mr. Kaetz is that his identity is never hidden or obscured in any way. Mr. Kaetz submits that being consistent about his purpose in the voicemail, the mailed package, and the email and attachments is proof that he wants Judge 1 to take action on his case—to reopen it and recuse herself. No statements in any of the communications are threatening. Mr. Kaetz clearly identifies himself consistently in the voicemail, the mailed package, and the email. Mr. Kaetz is consistent with the attachments in the mailed package and email. In fact, when these three actions are considered together, Mr. Kaetz clearly only requests action on and consideration of his case.

Retaliation is also not mentioned or alluded to within any of the purported communications. A requested relief of Mr. Kaetz's claims is that Judge 1 be removed from the bench—not by physical force, but by a motion in civil court filed with Judge 1. Mr. Katz's political view and that which is contained in the attachments to the email is that Judge 1's rulings evince a socialist viewpoint. Mr. Kaetz, through his civil action, is requesting at Article IV, Section 4 of the United States Constitution be enforced. Mr. Kaetz is asking the Courts to issue an order enforcing Article 4, Section 4. Mr. Kaetz is not threatening to enforce Article 4, Section 4 himself on all of those people he views as being socialist. Mr. Kaetz is not inciting others to take action against people he views as socialist. In the email to numerous people, including Judge 1 and the general email box of the USMS and other DOJ officials, Mr. Kaetz is asking law enforcement to take action over

the investigation of judges who violate their oath.  Please note that Judge 1 never contacted the

USMS about the email communication.  Other DOJ officials notified the USMS.

Deputy Safier also testified to additional statements contained in the email which he

interpreted as concerning.  Deputy Safier stated:

> To start, there's talk about avoiding stonewalling the case, which has been a recurrent
> theme. The urgency of it being of national importance. The reference to Judge 1 as a
> traitor; the reference to that -- the penalty for that being a death sentence. The comment
> about using the sword to take down those who fail to do their job. The reference to: I
> will try my best not to harm the traitor judge but the traitor judge has to be dealt with.
> The indication that Mr. Kaetz was going to dox the judge by publishing the judge's
> home address.
>
> There's an indication—in addition to the suggestion that Judge 1's home address will
> be publicized, there is an intent that others who may have a grievance will learn that
> and act on it. There's a reference to protection on our end of the judge. There's an
> indication at the -- towards the end that if Mr. Kaetz's come -- if we come after Mr.
> Kaetz for this, there will be a call to take up arms and a call for insurrection. And, again,
> at the end there's urgency, an imminency relating to fixing the case now before the vote,
> meaning the upcoming election.
>
> PHT page 16-17.

However, Deputy Safier interprets these statements in isolation.  Mr. Kaetz previously sent a

package to Judge 1's home in hope of some action on his case.  Mr. Kaetz also called the court's

chambers to ask for action on his case.  Mr. Kaetz clearly is litigious.  He has three cases in front

of Judge 1.  Mr. Kaetz clearly uses the courts to file his claims.  In the email he simply uses a few

phrases to express his frustration with the slow pace of Judge 1's work.  He also implores the

USMS to investigate Judge 1 and remove her from the bench for allegedly violating her oath of

office.  Mr. Kaetz reminds the USMS that they have an obligation to remove a bad judge.  In the

email, Mr. Kaetz is not conveying his scheme to take action against Judge 1.  Mr. Kaetz is merely

summarizing his positions in documents already filed with the court.  Again, in the email, Mr.

Kaetz requests that the USMS read the attached documents to provide context to his email and his requests for the USMS to take action.

The USA and Deputy Safier take the position in that listing Judge 1's address publicly on a social media site is illegal. It is not. Mr. Kaetz is not saying that listing Judge 1's home address on twitter and Facebook was the smartest thing he has ever done, and he does regret it. But, doing so is not a crime.

The weight of the evidence in the case against Mr. Kaetz cannot fully be considered if the measuring is not done while balancing Mr. Kaetz's First Amendment Rights. The First Amendment of the United States Constitution prohibits the government from taking action when the government disagrees with the content of someone's communications. Additionally, Mr. Kaetz is protected from governmental action by the First Amendment when he petitions the government for redress of grievances. Mr. Kaetz filed several cases in the federal court of New Jersey. Mr. Kaetz's cases languished. Suddenly, he found one of his cases dismissed. Mr. Kaetz took action by filing an amended complaint, a motion to reopen the case, and a motion for Judge 1's recusal. Mr. Kaetz did not take action against Judge 1. When Judge 1 took no action in response, Mr. Kaetz exercised his First Amendment right by petitioning the judicial branch of government to redress his grievances. He left a voicemail, he mailed documents, and then sent an email and attachments to several people he viewed with the power to take action on his case. The government is now taking action against Mr. Kaetz because of the content of his communications.

True threats and incitement are not protected communications. Although a Court of Appeals decision from the Second Circuit, Judge Pooler's dissent in United States v. Turner is instructive on this very issue.

> The true threats category distinguishes true threats from purported threats that are mere "political hyperbole," even if "vituperative, abusive, and inexact." *Watts,* 394 U.S. at

14

708, 89 S.Ct. 1399. Similarly, the incitement category distinguishes incitement from the "advocacy of the use of force or of law violation." *Brandenburg,* 395 U.S. at 447, 89 S.Ct. 1827. To distinguish true threats from political hyperbole, we use an objective test, "namely, whether an ordinary, reasonable recipient who is familiar with the context of the communication would interpret it as a threat of injury." Majority Op. at 420 (quoting *United States v. Davila,* 461 F.3d 298, 305 (2d Cir.2006).

* * *

To distinguish incitement from advocacy, we look to whether the communication "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg,* 395 U.S. at 447, 89 S.Ct. 1827; *see also Hess v. Indiana,* 414 U.S. 105, 108–09, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (finding no incitement where the "statement was not directed to any person or group of persons")

United States v. Turner, 720 F.3d 411, 430 (2d Cir. 2013).

The USMS, USAO, and Judge 1 may not be fond of the language used in the email and attachments, but the First Amendment protects citizens of the USA to speak out against those in government.  The email did not contain a threat, a threat of injury, nor a threat directed to inciting or producing imminent lawless action on behalf of Mr. Kaetz.  All of the above applies also to the social media posts detailed in the hearings at issue.  In those social media posts, Mr. Kaetz only states to "send a message" on Facebook and on Twitter to let the message convey to Judge 1 how seriously an oath should be taken.  For the more strongly worded tweet, there were no likes, no retweets, comments, or shares eleven hours after it was posted as a comment to another tweet.  The tweet did not contain any mention of urgency or immanency on the writer's or the reader's part.

Lastly, treason can be located at 18 U.S.C. §2381 and it states that "Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States."  18 U.S.C.A. §2381.  The USA and Deputy Safier try to emphasize the email's reference to a death sentence being a possible statutory maximum penalty in a treason case.  Other than being an accurate statement of the law,

execution of a death sentence is only carried out by the government after an arrest, trial, and sentencing. Private citizens cannot arrest people and cannot enforce Title 18 offenses. The obvious and most reasonable reading of the email along with the actions of Mr. Kaetz indicates that he has filed papers with the court upon which he wants action.

Taking into account the evidence as we know it and the principles of protected speech, a conviction in this matter for violating §875 or §115 is unlikely. The USA may be able to link the email and its attachments, the social media posts, and the voicemail to Mr Kaetz, but the USA lacks any evidence that the language used was a true threat or done with the specific intent to communicate a threat.

**The history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings**

William "Bill" Kaetz was born in New Jersey. He lived in Pennsylvania while he was married. Upon being divorced in 2006, he moved back to his home state of New Jersey. He is a dedicated family man and businessman who helps others when he can. Mr. Kaetz is not wealthy. He is a self-employed professional who gets paid job by job and lives paycheck to paycheck. He has been self-employed since 2010. Mr. Kaetz is a professional carpenter and installer of commercial retail establishments. Meaning, he builds out infrastructure for retail businesses including their product display, inventory storage, and cashier workstations. Prior to 2010, Mr. Kaetz also had his own business, Kaetz Workshop. Some of Mr. Kaetz's work has been used in major television commercials. After Mr. Kaetz's divorce, he was left with little but his children and siblings. He is proud of what he has built over the last 20 years. Covid-19 stay at home orders, shutdowns, nonexistent work, unemployment, and his recent undue extended incarceration has put all of his hard work and accomplishments at risk.

16

Mr. Kaetz is a loyal American who, unlike many politicians, believes that the oath of office means something—the bill of rights in U.S. Constitution means something.  Lately, this has involved the filing of federal and state lawsuits to redress his grievances.  Since he was unable to afford to pay lawyers to aid him and advise him during these lawsuits, Mr. Kaetz has proceeded to assert his rights *pro se*, which has led to a sharp, steep, and continuing learning curve.  Unfortunately for Mr. Kaetz, part of that learning process involves temporary of loss of liberty.

Who is Bill Kaetz?  Bill Kaetz, when he is not working spends time with his family, his fiancé, and the gym.  Through his local gym(s) in Paramus, NJ, Bill has dedicated much of his personal time to raise money for individuals and national causes.  Running the NYC Marathon is no small feat.  Bill decided to run in the NYC Marathon to raise funds to fight cancer.





Bill did not decide one day to run a marathon to raise funds for cancer research. Bill had to dedicate personal time to train for and finish the marathon. Bill has also participated in other workouts and cycling fundraisers. To help fight breast cancer, Bill participated in Barbells for Boobs and Making Strides for Breast Cancer as can be seen by his participation t-shirt and photograph below.





Bill would also dedicate time to particpate in cycling events to raise money for cancer research.

Bill would often invole his children in these endeavors.  Each event done with others in mind.









Other than dedicating himsef and his family to helping raise money for cancer reaserch, Bill also spent time raising money for our oceans.  The annual Gold's Gym Boardwalk Workout raises money for Clean Ocean Action, a group dedicated to keeping our oceans and beaches safe and clean.

# The Annual Gold's Gym Boardwalk Workout!

by mepstein

Everyone is always welcome to join us each year for the Annual Gold's Gym Boardwalk Workout! This year's was held on June 22 on the Boardwalk in Pier Village in Long Branch, New Jersey and is one of our favorite events of the year! The Boardwalk workout supports our friends at Clean Ocean Action who work on behalf of all of us to keep our water and beaches safe and clean for our families! The Boardwalk Workout is brought to you by Gold's Gym Paramus, Long Branch, Howell and Bridgewater.



Another type of boardwalk workout in which Mr. Kaetz participated helped raise money for relief of NJ residents after Hurricane Sandy devastated the eastern shoreline of NJ.



At his local Crossfit Gym, Mr. Kaetz routinely participated in an annual workout event to help raise funds for the Lt. Michael Murphy Memorial Scholarship via The Murph Challenge which raised money for area veterans and to help establish a museum on Long Island, NY for U.S. Navy SEALs and a Sea Cadet Training Facility.



## HOW THE EVENT HAS GROWN

### ALL FOR A GOOD CAUSE

The Murph Challenge is the Official annual fundraiser of the LT. Michael P. Murphy Memorial Scholarship Foundation, presented by Forged®. It is also one of the primary means of funding for the Foundation on an annual basis. YOUR support is what drives our success!

Since 2014, Forged® has raised over $1,000,000+ for the LT. Michael P. Murphy Memorial Scholarship Foundation through The Murph Challenge campaign. In 2019, The Murph Challenge Fundraiser provided a vehicle to raise nearly $250,000 in order to finalize construction on the LT. Michael P. Murphy Navy SEAL Museum/Sea Cadet Training Facility in Long Island, NY! In addition to that, and ONLY with such overwhelming support and success, the Foundation awarded 32 scholarships in 2019 and 2 new scholarships in 2020!

This unique Memorial Day tradition will take place again throughout the world on 05.25.20. We invite YOU to join countless other participants worldwide. Registration begins April 1st for The Murph Challenge 2020!

Once you register, you will not only be pledging to participate in the Crossfit Hero WOD 'MURPH' (originally named 'Body Armor'), you will also be joining a unique group of participants who pay tribute to LT. Michael P. Murphy (SEAL), and contributing to a prestigious organization founded by the Murphy family.

Beginning on Memorial Day, each registrant will be asked to return to TheMurphChallenge.com and submit their 'MURPH' time to compare their achievement with other participants worldwide. All times submitted will be displayed on a worldwide leaderboard found at TheMurphChallenge.com. From that board, the top 5 Men and top 5 Women will be recognized for their efforts.

The Murph Challenge is more than just a workout. It is a tradition that helps push us, humble us, and allows us the opportunity to dedicate a bit of pain and sweat to honor, LT. Michael P. Murphy, a man who sacrificed everything he had for our freedom.



Mr. Kaetz is a sociable person.  He has many friends with whom he likes to spend time. Attached to this motion are four letters of support evincing the good hearted nature of Mr. Kaetz. Trae Seely, President of Commercial Décor Group, Inc., describes Mr. Kaetz as "prompt and reliable and has a polite and accommodating manner."  Seely describes his work with most of the high-end retailers in Manhattan and throughout the Northeast as being "expert level…detailed and meticulous."  Seely closes his letter by informing the Court that Mr. Kaetz will be hired by the company again while stating that Mr. Kaetz's "character and work ethic has been consistently good."

A letter of support from Scott Usher, President of Metro Light and Power, LLC, reveals a ten year long friendship and professional relationship.  Mr. Kaetz is open about his current situation with Mr. Usher.  While describing Mr. Kaetz as "diligent, competent and nothing but affable…," Mr. Usher states that Mr. Kaetz is not timid or shy to speak up in defense of others or situations that he views is not fair.  Indeed, Mr. Usher relates that trait of character as being all bark and no bite, although he does concede that perhaps Mr. Kaetz's mouth (or fingers) got himself into more trouble than he anticipated when that email was sent.

A letter from Robert Schneider reveals that Mr. Kaetz helped get him a job or jobs as a contractor for Commercial Décor Group.  Mr. Schneider mentions that he has known Mr. Kaetz for 4 years.  He describes Mr. Kaetz as being "conscientious, respectful, professional and a hard worker."  Mr. Schneider closes with stating that he knows Mr. Kaetz has "concern[] for his children and fiancé."

In addition to her testimony and her desire to be her dad's third party custodian, if required, Catherine Kaetz, daughter of William Kaetz, wrote a letter to the Court to try to provide additional insight into who her dad is and what her relationship with him is like.  Ms. Kaetz readily admits

24

that which most of us say silently to ourselves these days, "Corona hit all of us hard. The drastic change of life, routine, jobs, hobbies, sociability and our outlets of our emotions that made us go through our lives more peacefully. Isolation has effects on the psyche. It's been difficult to keep that inner peace and balance."  Prior to COVID-19, she tells how her life with her father became closer as they began to share their feeling and experiences.  She goes on to explain that her dad "..loves nature and animals, and even wants his own mini apiary in the backyard."

William "Bill" Kaetz is a complex person.  He is someone who puts the needs of others in front of his own.  America would be better off if more people followed in Mr. Kaetz's footsteps and dedicated some personal time to raise money and awareness for cancer research, clean beaches, clean oceans, hurricane relief, and our veterans.  He was not built to endure a pandemic.  Some of human beings thrive in seclusion while some need daily social interaction to feel as though they are living their best life.  Mr. Kaetz took pride in his work, his workouts, and his friends.  When the pandemic hit the east coast of the USA like a freight train, the interaction and attachment Mr. Kaetz had with his work, his friends and his gym fractured.  The lockdowns and isolation which disconnected Mr. Kaetz from his life lasted longer than anyone could have imagined.  The federal government failed to follow the science of pandemics and provide the people with the resources to survive.  As one result, people were isolated longer, businesses closed, and the self-employed suffered hardship.  Mr. Kaetz is one of those people.

COVID-19 hit the eastern United States, especially the NYC/Northern NJ area extremely hard.  Shutdowns were ordered in mid-March.  The shutdowns were complete and total as a novel corona virus was causing Americans to ask questions which had no answers.  Answers could not come fast enough.  The shutdowns included the very commercial establishments which would use Mr. Kaetz's services build-out a space in a building or to remodel.  The shutdowns also closed the

gyms where Mr. Kaetz spent much of his time and out of which he gained most of his social interaction with friends.  Mr. Kaetz found himself out of work and isolated from friends.  Mr. Kaetz found himself living off of savings.  Mr. Kaetz's profession did not permit working remotely.  As time went by, Mr. Kaetz found himself interacting ever more with social media while also using his time to prosecute the civil actions he had filed.  He even filed an untimely appeal to overturn a prior July 2003 federal criminal conviction.  The combination of isolation, fatigue, unemployment, and the fantasy world of social media was the unfortunate spark resulting in a late-night, inebriated email being sent to the USMS, the DOJ, and Judge 1.

In addition to his untimely, to say the least, appeal of his 2003 conviction, Mr. Kaetz's civil cases are filled with ramblings of the loudest influencers on far-right social media platforms and entertainers on the airwaves.  The cause of action and request for relief are hardly able to be deciphered.  Although still under development, Counsel's experience informs him that unemployment, isolation, the uncertainties of covid-19, and the litany of mixed (and often fraudulent) messages of the President of the United States exacerbated the stress, anxiety, and PTSD from which Mr. Kaetz suffers.  Unaffordable healthcare and lack of insight into the deterioration of his own condition contributed to the events resulting in Mr. Kaetz's arrest—treatment was not possible.  Treatment now can make a real, measurable difference.

At the preliminary and detention hearing, the USA did not provide any evidence of serious risk of flight and Mr. Kaetz only makes mention of it here as the pretrial services report makes it clear that Mr. Kaetz is the breadwinner of his household.  He also provides employment opportunities for his daughter, Catherine, who was proposed as the third party custodian—as someone who can work and has worked with Mr. Kaetz.  Obviously, the data within the pretrial services report indicates that Mr. Kaetz has strong ties to northern NJ.  His home, fiancé, family,

and employment are all tied to northern NJ.  Although Mr. Kaetz has been in trouble in the past, he has never failed to appear for a court hearing.  The USA used a potential violation of probation as a reason he could not comply with conditions of pretrial release, but that effort failed in that there is no reliable evidence of record and only guesses by USMS Deputy Safier stating that Mr. Kaetz was sent to Butner for a mental health evaluation.  One thing we know for sure is that the pretrial services report does not mention that he was found to be in violation of probation, nor does it mention that Mr. Kaetz was ever resentenced to a period of incarceration at any time for the previous conviction[3], even if for a mental health evaluation at Butner.

Mr. Kaetz is a responsible American who tries his best to support his family.  A condition or series of conditions which would be beneficial to Mr. Kaetz and for which the court is particularly suited to provide Mr. Kaetz would be that of pretrial services connecting Mr. Kaetz with a mental health provider with whom he can seek evaluation, counseling, and treatment.

**The nature and seriousness of the danger to any person or the community that would be posed by the person's release.**

No one person nor the community as a whole is in any danger if Mr. Kaetz is released either on his own recognizance or subject to a condition or series of conditions.  The email, its attachments, and the other communications with Judge 1's chambers were not communications a reasonable person, properly instructed, would conclude were threatening.  Moreover, as a result of this pending case, Judge 1 has been removed from adjudicating Mr. Kaetz's civil cases.  Therefore, there is no reason for Mr. Kaetz to communicate with Judge 1.  If Mr. Kaetz would file additional lawsuits in federal court, he can file a notice that Judge 1 should not be assigned to his case.

**Pretrial Services Bond Report**

---

[3] Mr. Kaetz has filed a motion requesting access to MR. Kaetz's prior PSIR and probation file to research this matter more fully.  At the filing of this motion, Counsel has no been provided access to the probation file at the EDPA.

Due to the nature of these charges and the fact that the entire matter has been transferred to the WDPA, the WDPA Pretrial Services did not conduct their own pretrial interview of Mr. Kaetz. The pretrial services of NJ did not provide an opinion on whether there was a condition or set of conditions which would "reasonably assure" the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. §3142(g). Mr. Kaetz submits that no conditions are required for his release. He should be released on his own recognizance. Nonetheless, if the Court would require conditions, Mr. Kaetz submits that the following conditions would, in the least restrictive way, assure the safety of the community or any other person:

- mental health evaluation and treatment;
- home detention without EHM;
- Curfew;
- Work release;
- Travel restrictions—tri-state area or a radius of 180 miles from Paramus, NJ for work purposes only (to be expanded upon proof of good behavior and controlled by Probation office with job location verification);
- Review of proposed civil action filings by probation office with sufficient time for Court review if said proposed filing is deemed concerning (no opinion on the merits); and
- No contact with Judge 1.

If the Court initially requires more intensive supervision, the Court can require, in addition to the above or as an alternative to the above, the following:

- EHM with work release and GPS location and geofencing;
- Limited access to internet and social media platforms;
- Limited access to computers and smart devices.

Oversight and supervision conditions are used on every offender arrested by state and federal authorities. Conditions of supervision are the normal tools used to make sure any other person and the community are kept safe during the pretrial and post-incarceration phases of a matter. No condition or set of conditions can make safety an absolute certainty. The Bail Reform Act only

requires detention of someone when there is no condition or set of conditions which can reasonably assure the safety of a person or the community.  Clearly, conditions exist that can accomplish this goal.  The continued pre-indictment, pretrial incarceration of Mr. Kaetz is being done to punish Mr. Kaetz.  Punishment before guilt is improper.  Due to covid-19 shutdowns, Mr. Kaetz's continued incarceration is not protected by the speedy trial rules.  Indeed, Mr. Kaetz's arrest and preliminary hearing was in late October and an indictment has not been handed down by a grand jury almost two months later.  The normal speedy trial rights protect the innocent from prolonged pretrial incarceration by permitting a jury trial within 70 days.  Although the WDPA is convening grand juries, the District of NJ is not.  To balance the rights of the accused against unnecessary and prolonged pretrial incarceration and the reasonable safety of the community, release of Mr. Kaetz is warranted.

**Severity of the Charged Offenses**

There are two ways to measure the severity or seriousness of any given offense charged. The first is to look at the statutory maximum penalty.  A statute permitting a sentence of death, life, or 20 years is a more serious offense that has a statutory maximum sentence of 5 years or less. The second way to quantitatively measure the seriousness of an offense is to consult the U.S.S.C. Sentencing Guidelines.  The seriousness of an offense is measured by its base offense level, adjusted offense level, or total offense level.  The guidelines measure seriousness of offense on a numerical scale ranging from 1 to 43.  A offense level of 43 results in a guideline range sentence of "life" even is that person has never been in any trouble.  An offense level of 1 results in a short period of probation, or 0-6 months incarceration.

The statutory maximum punishment for violating §115 charged in this matter is 6 years under the facts of this case.  Within that same statute under certain conditions, a person can be

sentenced to life in prison or death.  Under the facts of this case, a violation of §115 has the lowest statutory maximum sentence in §115.  The statutory maximum punishment for violating §875 is 5 years.  These two offenses are class D felonies.  There are fines and other conditions as part of any sentence after a conviction, but for these purposes, incarceration length is the best judge of the seriousness of the offense.  The statutory maximum penalties Mr. Kaetz faces for the instant matter are the second to lowest federal felony charges.

## 18 U.S. Code § 3559. Sentencing classification of offenses

U.S. Code    Notes

prev next

(a) CLASSIFICATION.—An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is—

(1) life imprisonment, or if the maximum penalty is death, as a Class A felony;

(2) twenty-five years or more, as a Class B felony;

(3) less than twenty-five years but ten or more years, as a Class C felony;

(4) less than ten years but five or more years, as a Class D felony;

(5) less than five years but more than one year, as a Class E felony;

The sentencing guideline section used to determine the base offense level (BOL) for both of these offenses under the facts of this case is the same.  Section 2A6.1 is used to determine the BOL.  The BOL for these offenses starts at 12.  There are insufficient facts known to Mr. Kaetz at this moment to fully determine the total offense level (TOL), but even if 2-4 levels are added for specific offense conduct and then 2-3 levels are subtracted for acceptance of responsibility, Mr. Kaetz could have a TOL of anywhere from 10 to 14.  For these crimes, Mr. Kaetz is in the bottom 23% to 32% of seriousness of federal crimes under the guidelines.  With a CHC of I and a TOL of 10, Mr. Kaetz is looking at a guideline range sentence of 6-12 months, a Zone B sentence for which probation with community confinement or house arrest is possible.  With a CHC of I and TOL of 14, Mr. Kaetz is looking at a guideline range sentence of 15-21 months, a Zone D sentence, although right below the line separating Zones C and D.  Of course, these are the guideline

sentences before the Court applies any §3553(a) factors which should result in a variance downward.

Mr. Kaetz was arrested on October 18, 2020. Mr. Kaetz is not expected to be indicted until early 2021 and Counsel's best guess is that the District of New Jersey will not be empaneling grand juries until well after March 2021 resulting in the continued pretrial incarceration of Mr. Kaetz potentially in excess of his possible sentence even after a trial. The judicial branch of government should not permit the executive branch to incarcerate Mr. Kaetz purely for punitive reasons with no access to programming or rehabilitation counseling needs normally provided to a person serving a sentence. Additionally, COVID-19 restrictions at the Essex County Correctional Facility prohibit Mr. Kaetz from personal visits with his family. All of these variables point to the pretrial incarceration of Mr. Kaetz being cruel and vindictive. Continued incarceration of Mr. Kaetz is also violative of §3142 since a condition or series of conditions exists to reasonably assure the safety of a person or the community.

The current isolation and pretrial incarceration of Mr. Kaetz is not contributing to a positive outcome in this matter. Continued incarceration prohibits continued family contact and support. Continued incarceration in this matter prohibits mental health evaluations and treatment. Continued incarceration in this matter does not further any goal described in 18 U.S.C §3553(a). Releasing Mr. Kaetz with or without conditions will help achieve any goals the USA and this Court have in mind as appropriate for Mr. Kaetz. The Courts and the USA should look to solve the problem and not merely try to incarcerate the problem. Eventually, Mr. Kaetz will be released. Prior to establishing guilt, he should be released before he has lost his family, friends, and his business.

**COVID-19 Exposure Concerns**

COVID-19[4] is a novel infectious disease caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a virus closely related to the SARS virus.[5]  In its least serious form, COVID-19 can cause illness including fever, cough, and shortness of breath.  However, for individuals who become more seriously ill, a common complication is bilateral interstitial pneumonia, which causes partial or total collapse of the lung alveoli, making it difficult or impossible for patients to breathe.  Thousands of patients have required respirators, and COVID-19 can progress from a fever to life-threatening pneumonia with what are known as "ground-glass opacities," a lung abnormality that inhibits breathing.[6]

The virus is thought to spread[7] mainly between people who are in close contact with one another (within about 6 feet) through respiratory droplets produced when an infected person coughs or sneezes.  A person can also get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes.  What doctors and experts are calling "community spread" is at the root, and "social distancing" is being enforced as the best method of prevention.  Social distancing means, in essence, isolating oneself from other people as much as possible: working from home, avoiding travel, avoiding crowds and contact with others, not touching common surfaces, and generally staying at least 6-12 feet from other people as much as possible.  In fact, at one time 95% of the U.S. population was ordered to stay at home.[8]  Recently, some states and metropolitan locales have reinstituted varying degrees of lockdown.

---

[4] Centers for Disease Control, Coronavirus 2019, https://www.cdc.gov/coronavirus/2019-ncov/index.html
[5] Briefing from the White House Coronavirus Task Force, last updated March 12, 2020. Available at: https://www.cdc.gov/coronavirus/2019-ncov/index.html.
[6] "Ground Glass Opacification," Radiopaedia.com, last accessed: March 12, 2020.
[7] Centers for Disease Control, Coronavirus Factsheet, March 3, 2020: https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[8] https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html

On March 11, 2020, a study was submitted for peer review suggesting that the COVID-19 virus is airborne and can remain viable in the air for up to three hours after becoming aerosolized.[9] The virus can get into the air when someone who is infected, even if they are asymptomatic, breathes, coughs, or sneezes, or if their bodily fluids are released into the air.  The study also confirms earlier reports that the virus can remain active and transmissible on plastic, metal, and other surfaces for up to three days.  Experts note that 25% of people who acquire COVID-19 are asymptomatic (do not know they have it—they do not show signs or symptoms) and pass it on to more susceptible people with immunocompromised immune systems.  The immunocompromised will show these signs in a more fatal way.  Asymptomatic COs and staff entering the facility are readily capable of exposing Mr. Kaetz to COVID-19.

On March 11, 2020, the World Health Organization ("WHO") officially classified the new strain of coronavirus, COVID-19, as a pandemic.[10]  As of December 16, 2020, COVID-19 has infected at least 73,500,000 people worldwide, leading to at least 1,600,000 deaths[11].  In the United States, at least 16,800,000 people have been infected, leading to at least 305,000 deaths[12].  These numbers almost certainly underrepresent the true scope of the crisis as test kits in the United States have been inadequate to meet demand.  Additionally, the United States represents the highest percentage of increase in diagnosed cases and deaths in the world.

The Centers for Disease Control (CDC) National Center for Immunization and Respiratory Diseases has issued recommendations for safety precautions that individuals and communities should take to lessen the further spread of the illness and to protect oneself from contracting it.

---

[9] "Tests Indicate Coronavirus can Survive in the Air," John Bowden, *The Hill*, March 11, 2020, available at: https://thehill.com/policy/healthcare/487110-tests-indicate-coronavirus-can-survive-in-the-air

[10] "WHO Characterizes COVID-19 as a Pandemic," World Health Organization (March 11, 2020), available at https://bit.ly/2W8dwpS.

[11] https://coronavirus.jhu.edu/map.html

[12] https://coronavirus.jhu.edu/map.html

Among those measures are frequent, thorough hand-washing, avoiding touching one's own face or other people's faces, the use of alcohol-based hand sanitizers when soap and water are not available, frequent cleaning with antiseptic cleansers of frequently touched items and surfaces, and social distancing.

One day at a time is a common colloquialism.  One 24 hour period incarcerated during COVID-19 is equal to at least 30 days during normal times.  The relentless stress and anxiety experienced by Mr. Kaetz, in particular, and incarcerated people overall, is overwhelming. Lockdowns, limited programming, extended isolation, limited commissary, zero contact visits with family and loved ones create an environment of severe stress and trauma.  The panic and anxiety do not end with the persons incarcerated.  The family members of those people in jail worry every day and become concerned even when a harmless cough is heard over a telephone call.

Because Mr. Kaetz's case is not the most serious on the federal dockets, because of his lack of recent criminal history, and because a condition or series of conditions exist to reasonable assure the safety of any one person or the community, Mr. Kaetz's continued incarceration only serves to expose him to covid-19 in a closed living facility where normal CDC precautions are impossible. This case will not result in a severe sentence and should not result in Mr. Kaetz having to fight covid-19 from behind bars when he has the ability to take care of himself at home with his family.

**Fair Consultation with Defense Counsel**

Mr. Kaetz has been appointed counsel pursuant to the CJA and the United States Constitution.  COVID-19 restrictions when coupled with the distance between Mr . Kaetz and Counsel serves to reduce his access to Counsel in any material way.  Counsel is only able to communicate with Mr. Kaetz via telephone.  Although the Essex County Correctional Facility

does permit video calls, said calls are not free and there is no guarantee that the communications will not be recorded or otherwise subject to overhearing by other inmates or correctional professionals.  Video calls are still very limiting when counsel needs to share materials and documents with Mr. Kaetz.

Mr. Kaetz is also limited in the length of time he can talk with his lawyer.  He is also limited to the time of day.  Although not the most serious case as detailed above, this case is the single most important event in Mr. Kaetz's life right now.  He should have free, unfettered access to his lawyer and legal team.  Release of Mr. Kaetz is not only consistent with §3142, but release is also consistent with the 5th and 8th Amendments of the United States Constitution.

**Conclusion**

Mr. Kaetz is an innocent man being incarcerated for exercising his First Amendment Right against a judiciary he viewed as acting inappropriately and in violation of Judge 1's oath.  To redress his grievance, he sent an email and voluminous attachments to the USMS and other DOJ officials, including Judge 1.  He sent the email to people with the power to investigate.  Mr. Kaetz did not do anything surreptitiously.  Nonetheless, because a review of the evidence known to Mr. Kaetz as of this filing reveals that there is little evidence to prove a true threat and obtaining a guilty verdict is low.

Although the offenses charged are technically "crimes of violence," as that term is defined, this matter involves the written word and not action.  There is no evidence that the email contains a true threat.  There is no evidence that Judge 1 even reviewed the communication.  The interpretation of the email by USMS Deputy Safier was improperly done in a vacuum.  The opinion of law enforcement in the interpretation of an email is not dispositive of this matter.  The USMS does not get to sit in judgment of Mr. Kaetz.  Mr. Kaetz certainly did not intend on any of his

language to be threatening.  He intended it to be strong.  More importantly, after review of this motion and the exhibits contained within it and attached to it, the Court has a better picture of who Mr. Kaetz is.  The court can infer from Mr. Kaetz's charitable works and letters of support that he would never harm anyone.  The Court does not have to guess.  The Court can read and trust the letters of support from family, friends and coworkers that know Mr. Kaetz well.

WHEREFORE, after review of the above, and because this matter is easily resolved with a condition or set of conditions which will reasonably assure the safety of any one person or the community and the appearance of Mr. Kaetz at all of his court proceedings, Mr. Kaetz respectfully requests he be released pending trial in this matter subject to the conditions set forth in §3142(c).


Respectfully submitted,


 /s/ Douglas Sughrue
Douglas Sughrue, Esquire